IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| PETER DINSDALE, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 110891N |
| | ) | |
| v. | ) | |
| | ) | |
| MARION COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals the omitted property assessment for personal property identified as Account P114566 (subject property) for the 2010-11 tax year. A trial was held in the Tax Courtroom in Salem, Oregon, on December 22, 2011. Plaintiff appeared and testified on his own behalf. Scott Norris, Assistant County Counsel, appeared on behalf of Defendant. Kara Driskell (Driskell), Property Appraiser II, and Catherine Green (Green), Personal Property Appraisal Technician, testified on behalf of Defendant. Plaintiff's Exhibits 1 through 6 were offered and received without objection. Defendant's Exhibits A through E were offered and received without objection.

## I. STATEMENT OF FACTS

The subject property includes four items of personal property: three "conveyers" and a blueberry "packing line." (Ptf's Ex 1-1; Def's Ex E.) Plaintiff testified that the property at issue is used by Blue Heron Farm as part of its blueberry operation. He testified that, in addition to blueberries, Blue Heron Farm also grows "nursery ornamentals," grass seed, wheat seed, blackberries, and strawberries. Plaintiff testified that blueberries are picked either by machine or by hand, placed into plastic "flats," and transported by truck to the "packing shed." He testified that, in the "packing shed," the subject property is used to sort blueberries, removing bad

DECISION  TC-MD 110891N                                                                 1

blueberries and debris from the good blueberries. Plaintiff testified that the process involves a sophisticated laser and camera machine that identifies and removes bad blueberries with precise air jets; he rents that machine. Plaintiff testified that the blueberries next move along an "inspection belt" whereby the berries are visually inspected and manually removed. He testified that, finally, the berries are placed into containers and labeled to indicate weight and origin. Plaintiff testified that the blueberries are sold in those containers. He testified that the blueberries are kept cool in the packing shed until they are shipped to market.

Plaintiff testified that, on the suggestion of Defendant, he applied for certification of the subject property as food processing machinery and equipment by the Oregon Department of Agriculture (ODA).[1] (*See* Ptf's Ex 2.) Plaintiff's application for certification was denied following an inspection by the ODA. (*See id.*) The reason for denial is stated as follows: "The request submitted Nov 2010 is denied as the establishment [and] equipment presented does not meet the definition of a food processor, rather it is a 'packing shed' with raw commodities (blueberries)." (*Id.*) Plaintiff testified that he did not appeal the denial because he agreed that the subject property is not used for processing, but, rather, is farm machinery and equipment.

Plaintiff testified that the blueberries are not "washed" or "altered" as part of the packing process, both of which he understands to be part of processing. He testified that he would also consider slicing strawberries, for example, to be processing, but that is not something that occurs in the "packing shed." Plaintiff testified that Blue Heron Farm also has a process whereby blackberries are picked, sorted, and placed into "clam shells"; however, that process is done manually and in the field. Plaintiff characterized those activities as "fresh packing" and testified

---

[1] Certification by the ODA is a necessary prerequisite to exemption of food processing equipment under ORS 307.455.

that the "fresh packing" industry is relatively new and the operations are typically relatively small. He testified that "fresh packing" has become more common recently because consumers are more interested in farm fresh produce.

Driskell testified that she inspected the subject property on January 12, 2010, and took several photographs of the subject property. (*See* Def's Ex A.) One of Driskell's photos is of a sign stating "[h]air covering required after this point." Driskell testified that the sign was on the door to the packing shed. Green testified that the "hair covering required" sign suggested to her that the packing shed was used for food processing. Plaintiff testified that the "hair covering required" sign is in place to prevent contamination of the blueberries. He testified that there are also "hair covering required" signs placed at several of the entrances to Blue Heron Farm; such measures are necessary to comply with strict audits of the farm.

Green testified that she determined the subject property is used for processing. She testified that she relied on the "apple example" provided in OAR 150-307.394 as illustrative of the distinction between a "crop" and a "product." That example states:

> "Apples are picked and go directly into cold storage. This would be considered 'placing in storage of farm crops.' When these same apples are sorted, washed or boxed it becomes a product and placing back into cold storage until sold is not considered 'placing in storage of a farm crops.' At this point apples change from a crop to a product."

Because the subject property is used to "sort" and pack blueberries, Green determined that the subject property is not farm machinery and equipment entitled to exemption under ORS 307.394. Plaintiff testified that the function of a combine, which is exempt farm machinery, is to sort the crop from the debris; that is the same function achieved in the blueberry packing shed with the subject property. (Ptf's Ltr at 1, Dec 1, 2011.) Green testified that the distinction is that the combine is used in the field.

Driskell testified that Defendant determined the subject property was omitted property subject to taxation and sent a notice of intent to add omitted property to Plaintiff on May 31, 2011. Plaintiff appealed that notice to this court.

## II. ANALYSIS

The question before the court is whether the subject property qualifies as exempt personal property for the 2010-11 tax year under ORS 307.394, which provides an exemption for certain farm machinery and equipment. ORS 307.394(1)[2] states in pertinent part:

> "The following tangible personal property is exempt from ad valorem property taxation:
>
> > "(a) Farm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops;
> >
> > "(b) Farm machinery and equipment used primarily for the purpose of feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products;
> >
> > "* * * * *
> >
> > "(d) Farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination of these activities."[3]

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143, 1145 (1993) (citations omitted). "[T]he text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *Id.* (citations omitted). Words of common usage

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

[3] ORS 307.394(1)(c) concerns equipment used "to implement a remediation plan" and has no applicability to the subject property in this case.

are to be "given their plain, natural, and ordinary meaning." *Id.* at 611. "[A]fter an examination of text and context," the court may consider the legislative history of the statute; "an ambiguity in the text of a statute" is not a "necessary predicate to * * * consideration of pertinent legislative history * * *." *State v. Gaines* (*Gaines*), 346 Or 160, 171-72, 206 P3d 1042 (2009); ORS 174.020. Finally, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172. Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

A.      *ORS 307.394(1)(a)*

As stated above, ORS 307.394(1)(a) provides a property tax exemption for "[f]arm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops." The term "farm machinery and equipment" is not defined within the statute. However, the Oregon Supreme Court in *King Estate Winery Inc. v. Dept. of Rev* (*King Estate*) has defined it as "machinery and equipment used to cultivate farm land or to raise animals."[4] 329 Or 414, 419, 988 P2d 369 (1999). The court stated that the exemption is allowed for machinery and equipment "used primarily in the natural progression of crop cultivation," which includes "the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops." *Id*. The court in *King Estate* analyzed whether the machinery and equipment at issue was used primarily for the

---

[4] *King Estate* interpreted ORS 307.400. Prior to 2001, the identical language at issue in ORS 307.394(1)(a), (b), (d) was included in ORS 307.400 (1999). *See* Or Laws 2001 ch 753 §§ 12, 15.

cultivation of crops or for the processing of crops into products for sale. *Id* at 419, 420. The court held that only farm machinery and equipment used for activities that "pertain to cultivating crops on land * * *" were meant to be included under the exemption and the court found "no legislative intent to include machinery and equipment used in fruit processing and fruit-product selling[5] as part of the definition of 'farm machinery and equipment.' " *Id.* at 421.

OAR 150-307.394(1)(b)  defines both "[p]rocessing" and "[s]torage of farm crops," and provides rules and examples to distinguish between the two. OAR 150-307.394 states:

"(1) Definitions:

"(a) 'Storage of farm crops' refers to the holding area in which a product is placed before processing begins.

"(b) 'Processing' is altering the crop in any way such as: washing, icing, sorting, grading, waxing, boxing, slicing, or cutting.

"(c) 'Primary' is the leading use or the use involving the highest percentage of time relative to all the various uses.

"Example: If an unlicensed farm vehicle is used 45 percent of the time to move cleaned, sorted, washed and bagged carrots ready for market (PRODUCT); 30 percent of the time to move freshly-picked carrots from the field to the warehouse or cold storage facility; and 25 percent of the time sitting idle, then the vehicle is used primarily in a nonexempt status and is fully assessable, even though that use is not 50 percent or more of the time available.

"(2) Machinery and equipment used to place a farm crop in storage are exempt from taxation. However, once processing of the crop is begun, it is no longer a crop, but a product. When the same machinery and equipment are used for both placing in storage and processing the primary use is what determines its assessment status.

/ / /

/ / /

---

[5] The subject property at issue in *King Estate* was a selection of tangible personal property used in the production and sale of wine, including materials and supplies constituting both inventory and non inventory items. 329 Or at 416, 417.

Example: Apples are picked and go directly into cold storage. This would be considered 'placing in storage of farm crops.' When these same apples are sorted, washed or boxed it becomes a product and placing back into cold storage until sold is not considered 'placing in storage of a farm crops.' At this point apples change from a crop to a product."

The language "placing in storage" was added to ORS 310.608(1)[6] in 1981 by Senate Bill (SB) 398. Or Laws 1981, ch 374, § 1. Senator Ken Jernstedt described SB 398 as a "housekeeping bill." Tape Recording, Senate Revenue and School Finance Committee, SB 398, February 26, 1981, Tape 39, Side A. Senator L.B. Day stated that the intent of SB 398 was to "get tools and supporting material that supports the farm equipment that harvest the crops" included within the category of exempt farm equipment. *Id.* Jim Scherzinger (Scherzinger), Legislative Revenue Officer, testified that the addition of "placing in storage" was intended to exempt equipment such as "fork lifts" and other equipment used for storing crops. Tape Recording, Senate Revenue and School Finance Committee, SB 398, April 8, 1981, Tape 71, Side B (testimony on proposed amendment SB 398-4). Scherzinger also testified that a line exists between harvesting, storing, and processing and that the inclusion of "placing in storage" was to clarify that equipment used for storing was separate and distinct from processing and more similar to harvesting. *Id.* Thus, the addition of the language "placing in storage" was meant to clarify, rather than expand, the existing exemption.

Plaintiff testified that the subject property is not used for "processing" because it is not used for "washing, grading, * * * slicing, or cutting" the crop. *See* OAR 150-307.394(1)(b). However, it is clear from Plaintiff's testimony that the subject property is used for "sorting," which is also included in the definition of "processing" under OAR 150-307.394(1)(b). Plaintiff

---

[6] *Former* ORS 310.608 (1969), *renumbered* ORS 307.400 (1981), *renumbered* ORS 307.394 in 2001. The pertinent language has remained consistent since the 1977 addition, despite undergoing structural changes and renumbering within the ORS.

testified that, in addition to sorting the blueberries, the subject property also distributes the sorted blueberries into packages that are later sold. Plaintiff argues that the subject property's sorting function is similar to the work of a combine, which sorts wheat as it is harvested. However, the sorting function of a combine is distinguishable as it occurs during harvesting and is, therefore, part of the "natural progression of crop cultivation[.]" Sorting that occurs subsequent to the steps included in "crop cultivation" is "processing." *See King Estate*, 329 Or at 419-421. The subject property is not used in the "natural progression of crop cultivation" because it is used to sort and pack blueberries after they have been harvested.

OAR 150-307.394(2) lends further support to the conclusion that the subject property is used for "processing" rather than for "placing in storage" as part of the "natural progression of crop cultivation." As stated in OAR 150-307.394(2), "once processing of the crop is begun, it is no longer a crop, but a product." As an example, the rule states that harvested apples placed directly into cold storage without processing are "crops," whereas apples removed from cold storage to be "sorted, washed or boxed" are "products," even if subsequently returned to cold storage. OAR 150-307.394(1)(b). The subject property serves to sort and pack the blueberries, both of which are activities characterized as "processing" under the rule. Because the subject property is used exclusively to process the blueberries into a product rather than to place them in storage as a crop, the subject property is not exempt as "farm machinery and equipment used primarily * * * [for] placing in storage of farm crops." ORS 307.394(1)(a).

B.      *ORS 307.394(d) -- any other agricultural use*

Plaintiff characterized the use of subject property as "fresh packing." He testified that the "fresh packing" industry is relatively new and the operations are typically relatively small. ORS 307.394(d) provides an exemption for "[f]arm machinery and equipment used primarily in

*any other agricultural* or horticultural *use* * * *." (Emphasis added.) The court next considers whether the subject property is exempt as "any other agricultural * * * use" within the meaning of ORS 307.394(d) because it is used for "fresh packing."

The court in *King Estate* considered whether the language "any other agricultural or horticultural use" was "intended to liberate the specificity of subparagraphs (a) and (b)" that would otherwise indicate a "legislative intent to combine the *uses* in subparagraph (b) (farm machinery and equipment used to process and to sell) with the *subject matter* in subparagraph (a) (crops)." 329 Or at 422 (emphasis in the original). The court rejected that interpretation, finding that the processing activities allowed under subpart (b) for "livestock, poultry, fur-bearing animals or bees or for dairying" could not be applied to the "farm crops" described in subpart (a). The court determined that "such an interpretation would violate the rule that use of a term in one section and not in another section of the same statute indicates a purposeful omission." *Id.*, citing *PGE*, 317 Or at 611. It is clear from *King Estate* that "any other agricultural * * * use" may not be read to combine the subject matter of subpart (a) with the uses described in subpart (b), but it is not clear whether use of the subject property for "fresh packing" might be exempt as "any other agricultural * * * use" within the meaning of ORS 307.394(d).

In light of the ambiguity of the phrase "any other agricultural * * * use," it is useful to consider the legislative history to discern what the legislature intended by the broad language of ORS 307.394(d). *Gaines*, 346 Or at 172. The exemption for "[f]arm machinery and equipment used primarily in any other agricultural * * * use" was added by HB 2847 (1977). Or Laws 1977, ch 819 §1. The House Agriculture and Natural Resources Committee held a public hearing for HB 2847 on March 29, 1977, during which several members of the committee expressed concern over precisely which items of farm inventory and farm machinery were

exempt from property tax. Tape Recording, House Agriculture and Natural Resources Committee, HB 2847 (1977), March 29, 1977, Tape 24, Side 2. Near the end of the full committee meeting Steve Eyman, Western Oregon Livestock, testified regarding the content of subpart (b) when he clarified that "the bill is concerned with [exempting] equipment used to produce a product, and the current version has to do with exempting equipment involved in the tillage of the soil." *Id.* He continued that, "particularly with dairy, there were a lot of things [local assessors] were questioning - a manure pump or manure spreader, or a milking machine * * * and every assessor in each community was in a quandary and they did it a little different[ly]. I think that's what we're clarifying." *Id.* Allan Howells (Howells), Department of Revenue, testified that the word "equipment" was being added to the statute so that nonmechanized farm tools (*e.g*., ladders, boxes, and tanks) that the attorney general had advised were not "farm machinery" would qualify for the exemption. *Id.*

Howells warned the committee that the language in HB 2847 exempting "farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination of these activities" created an ambiguity; he wondered how inclusive that section was and whether processing equipment was included. *Id.* Howells asked the committee "how do you define a farm? It's getting to the point where it's more a factory than a farm. [The Department of Revenue] needs clarification on what the precise intention is because it will become an issue in [future] litigation." *Id.* Additional testimony did not clearly address the questions raised by Howells. *Id.*

At the suggestion of the chairperson, a subcommittee was convened to further discuss HB 2847 and suggest amendments. *Id.* The first subcommittee meeting focused on the question of whether it was necessary to define the term "livestock" in the statute. Tape Recording, House

Agriculture and Natural Resources Subcommittee for HB 2847, March 31, 1977 Tape 26, Side 1. Subcommittee members discussed what types of livestock are included in the exemption and whether newer forms of animal husbandry such as earthworm farming and dog kennels that did not produce food or fiber might be included in the term "livestock." *Id.* The subcommittee decided to put the question to the full committee about whether to include a definition of qualifying livestock in the bill or maintain the broad language. *Id.* Ultimately, the version of HB 2847 that passed the legislature did not include a definition of livestock and maintained the broad language "any other agricultural or horticultural use or animal husbandry or any combination of these activities." From the subcommittee's discussion and the resulting statute, it appears that the legislature intended the broad language "any other agricultural or horticultural use or animal husbandry or any combination of these activities" to serve as a catchall for farm machinery and equipment used for the cultivation aspects of new forms of agriculture and animal husbandry. There is no suggestion from the legislative history of ORS 307.394(1)(d) and predecessor statutes that it was meant to provide an exemption for machinery and equipment used for "fresh packing" that occurs on a farm, such as the subject property.

C.      *ORS 307.455 -- food processing*

An exemption is allowed for certain food processing machinery and equipment under ORS 307.455, which defines a food processor as "a person engaged in the business of * * * processing or repacking for human consumption raw or fresh fruit, * * * in any procedure that occurs prior to the point of first sale by the processor." ORS 307.455(1)(b)(A). "Qualified machinery and equipment means * * * [p]ersonal property machinery and equipment that is used in an integrated processing line for the primary processing of raw or fresh fruit * * *." ORS 307.455(1)(d)(B). To qualify for the food processing exemption under ORS 307.455,

machinery and equipment must be certified by the Oregon Department of Agriculture. Plaintiff testified and provided evidence that he applied for certification of the subject property, but his application was denied. Plaintiff did not appeal the denial of the Oregon Department of Agriculture and this court has no authority to review the determination of the Oregon Department of Agriculture.

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that the subject property is used primarily for processing as defined in OAR 150-307.394(1)(b) and *King Estate*. Thus, the subject property is not exempt under ORS 307.394(a). The court further finds that the use of the subject property for "fresh packing" is not exempt as "any other agricultural * * * use" under ORS 307.394(d). Finally, the subject property is not exempt as food processing machinery and equipment because it is not certified by the Oregon Department of Agriculture. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of April 2012.

_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on April 13, 2012. The Court filed and entered this document on April 13, 2012.*